and at the trial the government put on a number of witnesses who testified that he was one of the organizers of this conspiracy. Mr. Bourne believes that this probably stems from the S-5 superseding indictment where we're not sure what exactly was presented to the grand jury. So what? Are you saying that the evidence, the material that you were seeking would somehow have established what is actual innocence? He wasn't part of the conspiracy or would have impeached all these witnesses who came forward and testified that he's one of the organizers of the whole drug smuggling operation? We're arguing that he, in fact, was not part. There was no connection between whether we're talking about the marijuana that might have been intercepted and brought into the… What about, as I understand from the government's summary of the evidence, six baggage handlers, two supervisors of baggage handlers all testified that Mr. Bourne was involved in this conspiracy. There was yet another cooperator. And there's also, we believe, testimony that, number one, that wasn't… So the jury heard those nine witnesses and other witnesses and believed them and concluded that Mr. Bourne was indeed involved. And we believe that that information may not have been presented to the grand jury, for example, and if it wasn't presented to the grand jury… There's conflicting evidence as to whether or not some of these witnesses even recall knowing Mr. Bourne. There's evidence that, in fact, the government placed evidence that there was an airline ticket showing that Mr. Bourne was with one of those witnesses. And to the extent that there was conflicting evidence, the jurors saw it, right? Yes. Or saw the conflicts. Yes, that is correct. Okay. However, if we look at – there would not have been the indictment if there had been – if the evidence – we're still not sure whether the evidence that was presented by these witnesses at the Petit jury was, in fact, the evidence that was presented to the grand jury. That's not a basis to open the grand jury. The fact that you're not sure what the grand jury was told, and so maybe it's different than what was said to the trial jury, is not a basis to open the grand jury process. If that were the case, every grand jury would be opened, right? I agree with that. So what is it about the July 18th transcript – the June 18th transcript that's relevant? I'm trying to understand. What do you think is in there that is necessary to make an argument on the 2255 or necessary for some other relief that your client might have? There were – there was no – we believe that, in fact, the evidence – there was no evidence presented to the grand jury that warranted that indictment. If we have disclosure of that indictment – What do you mean that warranted the indictment? That resulted in the indictment. I apologize. The grand jury returned an indictment. So you're just sort of speculating that maybe they returned an indictment casually? No, Judge. Our position is that the indictment actually is based upon fabrications. What fabrications? The swipe records, the having possession, being – anything to do with the elements of the – The swipe records, all that's at the – You've got to come close to washing away the testimony of all these witnesses who said he was at the heart of this drug smuggling conspiracy. He's one of the drivers. One of the drivers of the whole operation. Because that's what – if that was what he was indicted on in the – I believe that's the S-4. It would depend on whether or not that information and whether Agent Goldstein, for example, if that's what they were testifying to. We don't have that connection. We don't see – Well, the testimony that convicted your client was the testimony the jury heard. However, in order to get to that point, we don't know what the evidence was that was presented to the grand jury that would have returned that indictment. But that's true then. That's true in every case, right? However – You don't know what the grand jury heard, and so you can't be sure that what they heard was not different from what the trial jury heard. However, we do have a couple of transcripts. We know that in one of the indictments that they were – the prosecution was reading an earlier transcript as though it was almost like a play. Well, they're allowed to do – and what is your basis for saying they're not allowed to do that? I'm not saying they're not allowed to do it. What I'm saying, Your Honor, is that there's transcripts – and I'm sorry. So I don't understand why that's a problem. The concern is that there's some information that when we're not – this is not necessarily, for example, a fishing expedition. We are aware that there was false fabrications of information provided to the grand jury. So this is not just a mere fishing expedition as to whether or not falsehoods were advanced. And we stand firm, whether it's the June 2009 or the ultimate S-5 indictment, that we believe that these falsehoods are what returned the grand jury. And we don't know, in fact, if there were things that were left out that later – But the grand jury voted the indictment. So let's say you got this information. What then would be your argument? It would be the jurisdictional challenge. We believe that the elements that the grand jury heard may not have been – or that they were told about might be inconsistent with the law or that the elements, in fact, weren't proven or just falsified. All right. We reserve two minutes for rebuttal. Let's hear from Mr. Palacio. Good morning, Your Honors. May it please the Court. My name is Andy Palacio, and I represent the United States. Your Honors, in this case, the district court did not abuse its substantial discretion in denying the defendant's motion for disclosure, wholesale disclosure, of grand jury materials in connection with his pending 2255 motion. Could you address the swipe records, the argument about the swipe records? Certainly, Your Honors. So the swipe records, as I understand it from counsel's argument, relate to the defendant's presence at JFK Airport. Swipe records were presented to the trial jury, and arguments were made from those swipe records. But more importantly, and I think to respond to what I believe is – What do you think the swipe records show? What did the government contend that the swipe records show? The swipe records place the defendant at JFK Airport on November 5, 2005. But as I understand the argument here is that there was no evidence that the defendant was in physical possession of the narcotics that were seized. But in this case, as the Court is aware, the defendant was charged with a continuing criminal enterprise under Section 848. And he was charged under an aiding and abetting theory on the substantive counts. And generally, management or supervisory relationship within Section 842 is created when one person gives orders or directions to another person who carries them out. And that's what the trial jury heard in this case from a number of the cooperating witnesses, as Your Honor pointed out. Six baggage handlers, two supervisors who testified with respect to the defendant's involvement and orchestration of this conspiracy. And the directions and orders that they took on behalf of the defendant in this case. Your Honors, even if the grand jury materials revealed misconduct in the grand jury, and in this case there was no misconduct, the error was harmless as measured by the pettit jury's verdict. The pettit jury's verdict meant not only that there was probable cause to believe that the defendant was guilty as charged, but that he was in fact guilty as charged beyond a reasonable doubt. As I pointed out, the government presented ample evidence of the defendant's guilt in this case through the testimony of cooperating witnesses, law enforcement witnesses, tax records, real estate records. So because the pettit jury found that this evidence proved his guilt beyond a reasonable doubt, and this court has already found that that evidence supported the finding, any alleged error before the grand jury was harmless. I would also point out to the court that the defendant has already raised similar versions of this argument on three prior occasions in this court. Each time has rejected those arguments. So I would urge the court to once again reject those arguments. Your Honors, I would also submit that the defendant has failed to make a particularized need for these grand jury materials, which is required under the law. In this case, he has made a series of conclusory allegations of need, conclusory allegations of misconduct. I would argue to the court that his request for wholesale disclosure is really nothing more than a phishing expedition, Your Honor. And to relax the presumption against disclosure of grand jury materials to authorize a phishing expedition would defeat the purpose of the particularized need. For example, the defendant argued that the particularized need will be even more self-evident upon its release. I would argue that that's putting the cart before the horse. The defendant has not met his heavy burden to establish a need for these grand jury materials. As the court pointed out, the request here, although in the most recent submission has been somewhat tailored, the original submission is quite overbroad. And the district court's decision is within the realm of other district courts in finding that disclosure of wholesale grand jury materials is overbroad. Your Honor, I would conclude, unless there are no further questions, that the court did not abuse its substantial discretion in this case in denying the motion, and that the defendant has failed to meet his heavy burden to justify disclosure. You're not on the brief, Mr. Gillespie, right? I'm not, Your Honor. You're just breezing in here for the audience. Good work. Thank you. Thank you. Mr. Bialce, you have two minutes for rebuttal. Thank you, Your Honor. I agree with the government that the burden is high. However, the phishing expedition, if we examine the government's case at United States v. George, in there the courts ruled that there was no founded belief. There wasn't even that that was a phishing expedition. He was hoping, as Judge Sullivan pointed out, that everybody would try. Here I posit to you there's no dispute of the falsehoods. But let's say you got all these grand jury testimony. Let's say you got all the grand jury transcripts you're looking for. What at this point would you plan to be doing with them? Oh, opposing, I'm sorry, replying to the government's opposition to the pending 22-5 motion. That he was wrongfully convicted? What would your argument be? Let's take another look at the conviction that has already been sustained by this court. The conviction is grounded, was found by the jury, and was sustained by this court. But that conviction, for example, most glaringly, is based on the fact that Mr. Born was at the airport. That is the easiest- That's not true. That's not true. The conviction, as I read the record, was based on the testimony of multiple witnesses that Mr. Born was up to his neck in this conspiracy. He was one of the major players. He gave direction to others at the airport. He embraced and was part of the conspiracy and was one of the drivers of the conspiracy. And a lot of that was contradicted by those witnesses. Some of the witnesses- Your trial counsel had an opportunity to cross-examine them all on whatever relevant topics counsel chose. And I'm not sure, Judge, I don't know if, for example, all of the evidence that your Honor is aware of, if that was presented to the grand jury. Suppose it wasn't. We're not sure what was in the mind of those grand jurors at the time that they were hearing- What difference does that make at this point in our lives? Had they presented true and accurate facts to the grand jury, there would not have been an indictment. But that's- I mean, that's been foreclosed by a mechanic, right? I mean, that's a case that basically says where the trial jury has concluded not only that there was probable cause, but there was proof beyond a reasonable doubt, then you don't get to quibble over what may have been said or not said in the grand jury, right? Yes, Judge, that's the holding in mechanic. However, more along the lines of Nova Scotia, because we believe that he, in fact, would have an opportunity to examine this under 6E. Because in mechanic, they just break the evidence of the two witnesses who testified in tandem in front of that grand jury did not testify to the same things at the Pettit trial. Whereas here, we have the evidence stretching, beginning from the grand jury. But, I mean, the point is that if there's a difference between what was said at trial and in the grand jury, that would be potentially impeachment material, right? Yes. But you already, I think, are conceding that those witnesses were impeached at trial on the swipes, right? I don't- I can't answer that question correctly, Judge. What you're saying is that you already know that the swipe testimony was wrong because that came out during the trial, that it was not what the government purported it to be, right? Yes, Judge. But I am unaware of what was in the minds even of the Pettit jury. They've heard the evidence. I don't know what did they- We know what was in the minds of the Pettit jury. The Pettit jury concluded that the government had proved its case beyond a reasonable doubt. That's a high standard we have in the law. Yes, sir. And it's based on- Every single one of the jurors said that he or she believed the government has proved its case beyond a reasonable doubt. All stemming from the initial grand jury indictments. That's wrong. All stemming from the testimony that the government adduced at trial. We posit to your honor that it would never have gotten to that stage had there been no fabrications or manufacturing of whatever the evidence was that did convince the grand jury to- So it wasn't enough to persuade the trial jury to acquit, but it might have been enough to persuade a grand jury that there wasn't probable cause? That's your argument, right? Essentially, Judge. They would not have presented, they would not have had the element to satisfy the elements that would have warranted in any of the charges. And for those reasons, your honor, we would ask that if in fact it wouldn't be affirmed or reversed, we'd ask for it obviously to be reversed, but even affirmed as modified. So that he would be allowed to have, for example, as your honor pointed out, the June 2009 or the S-5 transcripts. And I thank you, your honors. Thank you, Mr. Bialci. Thank you, Mr. Palacio. We will reserve decision.